UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| LETICIA B. RIVERA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:12-CV-235-BG |
| | ) | ECF |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Michael J. Astrue, the Commissioner of Social Security prior to February 14, 2013,[1] denied

Plaintiff Leticia B. Rivera's applications for disability insurance benefits and supplemental security

income.  Rivera thereafter filed this action pursuant to 42 U.S.C. § 405(g) seeking review of the

Commissioner's decision, and the district court transferred the action to the undersigned magistrate

judge pursuant to 28 U.S.C. § 636.  After considering the parties' arguments and the administrative

record, the undersigned recommends that the district court affirm the Commissioner's decision and

dismiss Rivera's Complaint with prejudice.

## I.      Standards of Review

The Social Security Act defines disability as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which . .

. has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A) (2013).  A claimant is disabled "only if his physical or mental impairment or

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Colvin was automatically substituted as Defendant in this case.  Although the Acting Commissioner is the Defendant in this action, because Michael J. Astrue was the Commissioner of the Social Security Administration at the time Rivera's applications were denied, the term "Commissioner" rather than "Acting Commissioner" is used in this Report and Recommendation.

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.*; *see* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2013). The standard the Commissioner uses to review a claim for Social Security benefits involves a five-step sequential evaluation. 20 C.F.R. §§ 404.1520, 416.920. Under the sequential evaluation, an administrative law judge (ALJ) decides whether the claimant: (1) is not working in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals a listing in the regulations; (4) has an impairment that prevents him from doing past relevant work; and (5) has an impairment that prevents him from doing any other work. *Id.*

The standard a court uses to review the Commissioner's decision is more limited. The court may only determine whether the decision is supported by substantial evidence in the record as a whole and whether the Commissioner applied the proper legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The Commissioner's decision must be affirmed if supported by substantial evidence. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). "Substantial evidence is more than a scintilla, less than a preponderance, and is such that a reasonable mind might accept as adequate to support a conclusion." *Randall v. Astrue*, 570 F.3d 651, 662 (5th Cir. 2009) (quoting *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the ALJ's decision. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988).

## II.    Statement of the Case

Rivera quit working after she underwent surgery on her right wrist and claimed during the application process that she was limited in her ability to work because of problems with her hands.

(Tr. 144, 201.)  At a hearing before an ALJ she also claimed that she experienced problems with her elbows that contributed to difficulties picking up and holding objects.  (Tr. 31–32.)  She claimed that she was unable to pick up heavy objects and that she also experienced problems with her neck and back.  *Id.*  According to the medical records, Rivera has a history of bilateral carpal tunnel syndrome and underwent reconstructive surgery on both of her thumbs to address osteoarthritis prior to the date on which she claims that she became disabled.  (Tr. 13, 189, 193.)  The medical records show that Rivera has also been treated for mild degenerative disk disease, cervical pain, osteoarthritis, tendinitis, osteoarthritis in her knees, and migraine headaches.  (Tr. 202, 225, 248, 276, 347.)  Rivera was 44 years old at the time of the hearing, had a ninth-grade education, and worked in the laundry at a hotel for ten years before she claimed disability.  (Tr. 30, 138.)

The ALJ acknowledged Rivera's impairments and specifically found that she suffered from degenerative disc disease, arthritis, carpal tunnel syndrome, and lateral epicondylitis (inflammation in the elbows) but determined that her impairments did not meet a listing in the Commissioner's regulations.  (Tr. 15–16.)  He then determined that she had the residual functional capacity (RFC) to perform light work that would involve only occasional balancing, stooping, kneeling, crouching, and crawling; would not require overhead work; and would not involve constant handling and fingering.  (Tr. 16.)  Based on the limitations in the RFC determination, the ALJ determined that Rivera could not perform her past job as a hotel laundry worker.  (Tr. 20, 42–43.)

At the hearing the ALJ posed a hypothetical question to a vocational expert in which he incorporated Rivera's demographic information and RFC and asked whether such an individual would be capable of performing any other jobs in the national economy.  (Tr. 43.)  In response, the vocational expert testified that Rivera would be capable of working as a cafeteria attendant, cashier,

and hostess.  *Id*.  Based on testimony from the vocational expert, the ALJ determined that Rivera

could perform work that exists in the national economy and was therefore not disabled.  (Tr. 21.)

Rivera disputes the ALJ's findings and argues that he improperly discounted her subjective

complaints of pain and failed to properly evaluate the combination of her impairments.  She claims

that if the ALJ had properly analyzed her complaints of pain and considered the combination of her

impairments, he would have limited her to simple work and work that would allow a sit/stand

option.

## III.   Discussion

The crux of Rivera's arguments is that the ALJ failed to incorporate limitations related to

her pain and bilateral knee problems into the RFC determination.  She  argues that the ALJ should

have limited her to performing no more than simple work due to her pain; she contends that given

the limitations the ALJ included for no constant handling and fingering in the RFC determination,

a limitation to simple work might have eroded the occupational base to an extent that all jobs would

have been eliminated. She further contends that the vocational expert's list of jobs would have been

significantly smaller and perhaps completely eliminated if the ALJ had limited her to work that

would allow a sit/stand option.  She seeks reversal of the Commissioner's decision with instructions

that the ALJ include these limitations in the hypothetical question he poses on remand to the

vocational expert.

As an initial point, to the extent Rivera challenges the hypothetical question the ALJ posed

to the vocational expert, her argument must be rejected.  The ALJ's hypothetical question need only

incorporate the limitations the ALJ recognized.  *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir.

1994).  If the ALJ omits limitations he recognized or limitations that he did not recognize, there is

4

no error so long as the claimant's attorney was provided an opportunity to correct the deficiency by asking questions of the vocational expert. *Id*. Rivera's attorney was provided that opportunity. (Tr. 44–45.)

In regard to the ALJ's RFC determination, he complied with the applicable regulations and his decision is supported by substantial evidence. The term "RFC" is used to indicate the most a claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The determination regarding a claimant's RFC is made at the fourth and fifth steps of the sequential evaluation. §§ 404.1545(a)(5), 416.925(a)(5). In reaching the determination, the ALJ considers the individual's ability to meet the physical and mental demands, sensory requirements, and other requirements of work. *Id*. §§ 404.1545(a)(4), 416.945(a)(4). In connection with the assessment of a claimant's abilities, the ALJ also considers descriptions and observations from the claimant and others regarding the claimant's symptoms, including pain. *Id*. §§ 404.1545(a)(3), 416.945(a)(3).

The ALJ must consider a claimant's testimony regarding subjective evidence of pain and failure to do so is reversible error. *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981). Often referred to as the credibility determination, the analysis requires the ALJ to weigh the objective medical evidence and assign articulated reasons for discrediting the claimant's subjective complaints. *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988) (citation omitted). The ALJ's responsibility requires him to consider the claimant's medical history; medical records; and statements from the claimant, the claimant's physicians, and other persons; the objective medical evidence such as evidence of reduced joint motion, muscle spasm, sensory deficit, or motor disruption; and the claimant's statements in regard to the intensity, persistence, and limiting effects of pain in relation to the objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(2),

5

416.929(c)(2).  The ALJ must also consider specific factors such as the claimant's daily activities, factors that aggravate the claimant's pain, the intensity and duration of the claimant's pain, and the treatment and medications the claimant utilizes to treat the pain.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).  In addition, the ALJ must explain his reasons for rejecting a claimant's allegations of disabling pain.  *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).

The ALJ in this case acknowledged and fulfilled these obligations.  (Tr. 15–17.) He explained that he rejected Rivera's allegations of disabling pain based on the evidence from the medical records and Rivera's statements and daily activities.  He first acknowledged that Rivera underwent surgeries on her thumbs to address carpal tunnel syndrome and osteoarthritis and that an MRI indicated degenerative disk disease and some disk bulging.  (Tr. 17; *see* Tr. 211.)  He also acknowledged that Rivera underwent nerve blocks and epidural injections for her pain, took pain medication, underwent a diskectomy and fusion on disks in her neck, and underwent chiropractic treatment on her back.  (Tr. 17–18.)

The ALJ also found, however, that the treatments and surgeries Rivera underwent were successful in alleviating her pain.  The ALJ was correct.  The medical records show that Rivera reported that her surgeries relieved her pain, epidural steroid injections relieved the pain in her shoulder and neck for months and sometimes up to one year, injections provided 75 to 80 percent relief for neck pain, and prescription medications controlled her muscle spasms and provided pain relief.  (Tr. 196, 213, 217, 221, 223, 226, 238, 250, 326.)  In addition, the reconstructive surgeries Rivera underwent on her thumbs were successful; she denied weakness and numbness in her fingers after the surgeries.  (Tr. 326.)  Further, it should be noted that Rivera reported that her neck pain was

intermittent, the arthritis in her hands was characterized as "mild"; and nerve conduction studies to test for abnormalities in her upper extremities were negative.   (Tr. 18, 197, 274, 350.) An examination note from a physical examination conducted after Rivera filed her application for benefits includes notations of mild arthritis in her hands but normal grip and no signs of carpal tunnel syndrome; normal range of motion in her elbows with no abnormalities; tenderness in her neck and back but no radiculopathy; and normal range of motion in her knees.  (Tr. 197.)

In addition to the medical evidence, the ALJ also considered Rivera's daily activities. He noted that Rivera was able to drive, grocery shop, prepare meals, and wash dishes.  (Tr. 17.) Although the ALJ did not make note of further activities, Rivera indicated on application documents that she did housework and listed doing crossword puzzles as one of her hobbies, an activity that arguably involves concentration.  (Tr, 146, 148, 166, 168.)

Rivera's contention that the ALJ should have limited her to simple work because of her pain is not supported by the evidence of law.  There is no regulation or ruling that requires the ALJ to limit a claimant who experiences pain to simple work.  In addition, no doctor advised that Rivera's pain would interfere with her concentration to an extent that would require a limitation to simple work, and the medical evidence, which includes multiple normal findings, does not support the same.  The absence of objective factors such as limitations in range of motion, muscular atrophy, and weight loss, which is present in this case, may support an ALJ's decision that a claimant's pain is not disabling.  *Falco*, 27 F.3d at 163.  It is within the ALJ's discretion to discredit the claimant's complaints based on the claimant's testimony of her daily activities in combination with the medical records.  *Griego v. Sullivan,* 940 F.2d 942, 945 (5th Cir. 1991).

While the undersigned sympathizes with Rivera's struggles with her various health

conditions, the mere existence of pain does not establish disability. *Owens v. Heckler*, 770 F.2d 1276, 1281 (5th Cir. 1995) (citation omitted). Pain is not disabling unless it is constant, unremitting, and wholly unresponsive to therapeutic treatment. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). As noted above, the ALJ did not give full credit to Rivera's claims regarding her pain. He did, however, consider her complaints of pain in her hands by limiting her to work that would not require constant handling and fingering. (Tr. 16.) Based on the medical and other evidence, the ALJ's RFC determination is supported by substantial evidence. It was not error for the ALJ to omit a limitation to simple work from the RFC determination.

Nor was it error for the ALJ to omit a sit/stand option in the RFC determination. Rivera's contention that such a limitation was necessary because of her back and knee pain must be rejected. In regard to limitations in her back, the medical and other evidence shows that Rivera walks with a normal gait. (Tr. 133, 197, 313.) Radiological testing of her lumbar spine showed "small bulging discs at L4-L5 with no mass effect"; "slightly larger disc bulges in the lower thoracic spine without significant mass effect." (Tr. 248.) The medical evidence shows that Rivera's primary complaints were in regard to her neck and shoulders, and her pain in those areas was controlled with medication and other treatment. (*See, e.g.*, Tr. 357–58.)

In regard to her knees, Rivera complained after the hearing of "some pain" in her knees and claimed she found it difficult to climb stairs. (Tr. 357.) She was diagnosed with osteoarthritis and underwent injections for pain four months after the hearing. (Tr. 349.) However, physical and radiological testing did not show a debilitating condition. A patella grind test, which may suggest osteoarthritis, was positive and radiological testing showed some spurring and joint space narrowing. (Tr. 348.) However, tests to detect problems with ligaments were negative, range of motion was

essentially within the normal range, radiological testing showed no fracture or dislocation, and joints were stable and without swelling on examination.  (*Id*.)  Significantly, Rivera told the orthopedic surgeon who assessed her knees that her  pain began one year prior to the examination, but she did not mention knee pain during the hearing that was held four months prior to the examination. (Tr. 26–45, 347.)   In fact, the only complaint Rivera had regarding her knees during the administrative process was that she experienced difficulty kneeling, and the ALJ included a limitation against kneeling in the RFC determination.  (Tr. 16; *compare* Tr. 149 and Tr. 169, 172, 197.)  Nothing in the records or Rivera's testimony suggests a problem with her knees that would require the inclusion of a limitation in the RFC determination.  Contrary to Rivera's contention, the absence of a sit/stand option in the RFC determination does not compromise the Commissioner's decision.

Finally, in regard to Rivera's claim that the ALJ failed to consider the combination of her impairments, the ALJ considered each of Rivera's impairments, the combination of her impairments, and the effect that her impairments had on her ability to work throughout the sequential evaluation. (Tr. 16–19.)  Remand is not required on this point.  *See Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (rejecting the plaintiff's conclusory statement that the ALJ failed to consider the combined effects of impairments because the ALJ noted each impairment and referred to the plaintiff's impairments in the plural form throughout the sequential evaluation).  The ALJ must consider all the claimant's impairments–whether severe or non-severe–in combination throughout the disability process in order to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1523, 416.923. The ALJ did so in this case.

**IV.**   <u>**Conclusion and Recommendation**</u>

Once the ALJ identifies work that the claimant can perform, the burden shifts to the claimant to show that he cannot do the identified work. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)).   Thus, a plaintiff who disputes a finding that he is capable of performing jobs a vocational expert has identified must bring evidence contrary to the testimony of the vocational expert. *Perez v. Barnhart*, 415 F.3d 457, 464 (5th Cir. 2005).   Rivera has not shown that she is incapable of performing the jobs the vocational expert identified and the ALJ determined she could perform.   Substantial evidence supports the ALJ's decision in this case.   It is therefore recommended that the United States District Court **AFFIRM** the Commissioner's decision and **DISMISS** Rivera's Complaint with prejudice.

**V.**   <u>**Right to Object**</u>

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law.   Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy.   *See* 28 U.S.C. § 636(b)(1) (2013); Fed. R. Civ. P. 72(b).   To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found.   An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.   Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.   *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:          September 24, 2013.

NANCY M. KOENIG
United States Magistrate Judge